# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| GUSTAVO KINRYS, M.D.,<br><br>               Plaintiff,<br><br>v.<br><br>MASS GENERAL BRIGHAM HEALTH PLAN, INC. and OPTUM, INC.,<br><br>               Defendants. | Civil Action No.: 1:23-CV-12547-AK |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' <u>MOTION TO DISMISS</u>

Defendants Mass General Brigham Health Plan, Inc. ("MGBHP") and Optum, Inc. (collectively, "Defendants"), by their attorneys Locke Lord LLP, submit this memorandum of law in support of their motion to dismiss the complaint filed by *pro se* Plaintiff Gustavo Kinrys pursuant to Federal Rules of Civil Procedure 41(b) and 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff is a psychiatrist and former participant in Defendants' provider network. Defendants terminated their relationship with Plaintiff after discovering he had submitted a massive number of false claims for reimbursement for medical services he did not provide, as part of a years-long fraudulent billing scheme. Around the same time, in December 2020, Plaintiff was arrested and charged in this Court with 15 criminal counts related to that same fraudulent billing scheme and his attempts to obstruct the investigation. Two weeks ago, a jury convicted him of seven counts of wire fraud, six counts of false statements relating to health care matters, and one count of obstructing a criminal health care investigation. The jury found that Plaintiff fraudulently

billed Medicare and private insurance companies, including Defendants, for more than $11 million for medical treatments he never provided.

Shortly before his criminal trial began, Plaintiff commenced this action and two other civil actions—one of which names Defendant Optum, Inc. a second time—with nearly identical complaints.

As in each lawsuit Plaintiff filed, the complaint here is incoherent. Plaintiff appears to allege that Defendants injured him by failing to reimburse him for his fraudulent claims; or by terminating the relationship because he was submitting fraudulent claims; or by conspiring with federal prosecutors to charge him with healthcare fraud (the charges he was convicted of) so that Defendants could terminate the relationship and refuse to reimburse him. Defendants are unable to parse Plaintiff's rambling complaint to understand what specific misconduct they are alleged to have engaged in. Plaintiff's allegations lump the Defendants together and fail to identify the dates of any materials facts, leaving Defendants unable to determine who did what and when. Consequently, the Defendants cannot prepare a proper defense to these claims and the Court should dismiss the complaint as impermissibly vague under Fed.R.Civ.P. 8.

The complaint also fails to state any claims. Plaintiff asserts a motley 32 counts, including contract claims, tort claims, fraud claims, constitutional violations, consumer protection statute violations, and violations of unidentified state and federal laws. All these claims fail. Plaintiff's fraud claims do not contain specific facts sufficient to satisfy the heightened pleading standard of Rule 9(b). His consumer protection claims fail because he is not a consumer and merely alleges a garden variety commercial contract dispute, not a pattern and practice of deceptive conduct. Plaintiff's constitutional claim fails because Defendants are not state actors. His statutory claims fail for lack of standing, lack of a private right of action and failure to plausibly plead a violation.

His contract claims fail because he materially breached the agreement by committing criminal fraud, leaving Plaintiff unable to allege plausibly that he performed his obligations under the contract and relieving Plaintiff of its contractual obligations.[1]

## ALLEGED FACTS AND PROCEDURAL BACKGROUND

Plaintiff is a psychiatric physician formerly credentialed in Defendants' provider network. *See* Compl. Exhibit A (Doc No. 1) ¶ 6.[2] Plaintiff alleges he entered into two Participating Provider Agreements with Defendants, one effective January 1, 2011 and then another "on" October 2019. *Id.* Plaintiff does not allege when he entered into the first agreement. The complaint does not attach the agreements. He defines "the Agreement" solely as the first agreement and does not allege whether the second agreement differed from, modified or in any way impacted the first agreement.

Plaintiff alleges he submitted over 3,000 claims to Defendants for reimbursement for medical services rendered from March 2017 to April 2021. *Id.* ¶ 8.[3] Plaintiff alleges, with almost no details, that Defendants had no intention to and did not pay his claims, despite allegedly assuring payment. Compl. ¶¶ 9-16. Plaintiff does not allege when Defendants purportedly made these assurances, who made those assurances, or how he knows Defendants intended not to pay the claims when they purportedly made those assurances.

Plaintiff then admits that in March 2017, Defendants began investigating him for fraud related to his claims for reimbursement. *Id.* ¶ 19. He admits Defendants accused him of fraudulent

---

[1] If the Court does not see fit to dismiss the lawsuit, the Defendants respectfully request that the Court order Plaintiff to file a more definite statement under Rule 12(e).
[2] Defendants cite allegations in the complaint solely for the purposes of this motion and do not concede the truth of any such allegations.
[3] The complaint omits that on December 17, 2020, Plaintiff entered into a Voluntary Agreement not to Practice Medicine with the Massachusetts Board of Registration in Medicine in which Plaintiff agreed not to practice medicine in this or any other state. *See In re Gustavo Kinrys, M.D.*, Registration No. 210468, Board of Registration in Medicine Docket No. 20-951. It appears that Plaintiff violated the voluntary agreement by rendering medical services within the state after December 17, 2020 until April 2021.

-3-

billing practices. *Id.* He alleges, without any specific facts, that Defendants accused him of fraud to "intimidate" him and damage his reputation. *Id.* ¶¶ 20-25. Plaintiff alleges Defendants' investigation uncovering his fraudulent billing practices demonstrates Defendants' "monopolistic standing to exploit providers." *Id.* ¶¶ 34-35. Defendants terminated the relationship in or around December 2020. *Id.* ¶ 40. Plaintiff alleges that Defendants conspired with federal prosecutors to conduct "fraudulent investigations and fabricat[e] evidence." *Id.* ¶¶ 44-59.

On December 10, 2020, Plaintiff was arrested in connection with charges that he billed Medicare and private insurance companies, including Defendants, millions of dollars for treatments he did not provide and then obstructed the investigation into those crimes. Specifically, Plaintiff was indicted on seven counts of wire fraud, six counts of false statements relating to health care matters, one count of falsification of documents and one count of obstructing a criminal health care investigation. *See United States v. Kinrys*, 1:20-cr-10307-DJC (D. Mass.), Indictment, ECF No. 1 ¶¶ 64-71.[4] The claims Plaintiff submitted to Defendants were part of his widespread scheme to seek reimbursement from insurance companies for medical services he did not render. *See id.* ¶¶ 4, 7. On October 24, 2023, Plaintiff was convicted of fourteen criminal counts related to the scheme and he now awaits sentencing.  *See United States v. Kinrys* at ECF Nos. 185, 186.

On October 4, 2023, Plaintiff commenced this action. On October 26, 2023, Defendants removed this action to this Court. Plaintiff asserts 32 counts.[5] He seeks damages "expected to substantially exceed One Hundred Million Dollars," treble damages and confusing equitable

---

[4] Courts may take judicial notice of publicly available documents, including filings in other lawsuits, on a motion to dismiss under Rule 12(b)(6). *See Giragosian v. Ryan*, 547 F.3d 59, 66 (1st Cir. 2008) (Courts can consider matters of public record on a Rule 12(b)(6) motion, including documents from other court adjudications).
[5] Counts 17-32 are misnumbered because Plaintiff's numbering of the counts skips 17 and 18.

135330121v.4

remedies including injunctions against "injustices," the creation of a non-profit foundation and an injunction "reinstating [his] status as an in-network provider." *See* Compl., Sec. VI.

## ARGUMENT

I. **The Complaint Must Be Dismissed as to Optum Under the Duplicative Litigation Doctrine.**

Defendant Optum, Inc. must be dismissed from this action under the duplicative litigation doctrine.[6] "A plaintiff has no right to maintain two separate actions involving the same subject matter at the same time in the same court and against the same defendant," *Cherelli v. InStore Group, LLC*, 513 F. Supp. 3d 187, 192 (D. Mass. 2021), and a district court may dismiss a later filed lawsuit that is duplicative of another action pending in the same federal court. *See Sutcliffe Storage & Warehouse Co. v. United States,* 162 F.2d 849, 851 (1st Cir. 1947) (quoting 1 MOORE'S FEDERAL PRACTICE 237). Dismissal is "particularly salient where the two actions are pending before the same judge." *See Cherelli*, 513 F. Supp. 3d at 194.

Here, Plaintiff asserts the exact same claims against Optum as he does in the case styled *Kinrys v. Optum, Inc. et al,* No. 1:23-cv-12429-AK (D. Mass. 2023), presently pending before this Court. In that action, Optum moved to dismiss Plaintiff's complaint on November 9, 2023. *See id.* (Doc. No. 9). Plaintiff's complaint in this case appears to be copy-and-pasted from the complaint in that other action. Consequently, the claims against Optum here are barred by the duplicative litigation doctrine and should be dismissed.

II. **The Complaint Fails to Satisfy Rules 8(a)(2) and 8(d)(1) and Must Be Dismissed.**

Plaintiff's complaint is a web of confusing, vague allegations that leaves Defendants unable to determine what they are accused of doing wrong and, consequently, unable to defend against

---

[6] This argument applies only to Defendant Optum, Inc.  All sections of the Argument contained hereafter are raised with respect to both Defendants.

135330121v.4

Plaintiff's claims. The complaint fails to meet the basic pleading standards of the Federal Rules, requiring dismissal with prejudice under Rule 41(b). *See Vakalis v. Shawmut Corp.*, 925 F.2d 34, 36 (1st Cir. 1991) ("[A] district court has the power to dismiss with prejudice where a party has failed to comply … with the rules of procedure, including Rule 8.").

Rule 8(a)(2) requires pleadings to contain a "short and plain statement of the claim showing that the pleader is entitled to relief," while Rule 8(d)(1) requires that "[e]ach allegation must be simple, concise and direct." Fed. R. Civ. P. 8(a)(2) & 8(d)(1). When a complaint is not short and plain, or its allegations are not concise and direct, a district court may dismiss it. *See Solomon v. Khoury*, No. 16-10176, 2017 WL 598758, at * 9 (D. Mass. Feb. 13, 2017).  This pleading standard equally applies to *pro se* litigants. *See Green v. Massachusetts*, 108 F.R.D. 217 (D. Mass. 1985) (dismissing *pro se* complaint that did not allege necessary elements of cause of action). Plaintiff's complaint violates both rules and should be dismissed.

To satisfy Rule 8(a)(2), a pleading must allege "who did what to whom, when, where, and why." *Calvi v. Knox County*, 470 F.3d 422, 430 (1st Cir. 2006). The allegations must give the defendant fair notice of the claim and the grounds on which it rests, *id.*, so that the defendant has a meaningful opportunity to form a defense. *Diaz-Rivera v. Rivera-Rodriguez*, 377 F.3d 119, 123 (1st Cir. 2004).

Plaintiff's complaint does not contain any specific allegations of wrongdoing against either Defendant. Instead, it asserts general, vague, and conclusory allegations regarding over 3,000 separate reimbursement claims over a four-year period without reference to any specific interactions with Defendants. There is no who, what, where, why and when. This leaves Defendants unable to form their defenses; for instance, Plaintiff's failure to allege the dates of

events prevents Defendants from assessing potential statute of limitations defenses (which, given the number of causes of action asserted, could vary widely).

Moreover, Plaintiff asserts nearly every allegation against both Defendants indiscriminately, without specifying which Defendant is alleged to have committed which purportedly wrongful act. This "lumping together" of multiple defendants is a fatal defect. *See Bagheri v. Galligan*, 160 F.App'x 4 (1st Cir. 2005) (complaint dismissed because it did not state clearly which defendant committed each of the alleged wrongful acts); *Bishay v. Ricciuti*, 575 F.Supp.3d 262, 268-69 (D. Mass. 2021) (dismissing claims for failure to satisfy Rule 8(a)(2) because plaintiff "lumps all Defendants together without specifying which Defendant is alleged to have committed the pertinent act.").

Further, Rule 8(d)(1) requires allegations to be simple, concise, and direct. Plaintiff's 209-paragraph complaint, with nearly three dozen causes of action, fails in each respect.. It is not a short and plain statement but a disjointed, repetitive screed that is untethered from reality.  Plaintiff accuses Defendants of everything from racketeering to conspiring with federal prosecutors to charge Plaintiff with fake crimes, all without alleging any specific misconduct by either Defendant and with the glaring omission of Plaintiff's indictment for healthcare insurance fraud. Complaints like this, even those from *pro se* litigants, are subject to dismissal for failure to satisfy Rule 8(d)(1). *See Saade v. Pennymac Loan Servs., LLC*, No. 15-12275-IT, 2016 WL 4582083, at * 15 (D. Mass. Aug. 31, 2016) (dismissing largely disjointed, repetitive and unclear *pro se* complaint for failure to comply with Rule 8). The complaint should be dismissed under Rule 41(b).

## III.   The Complaint Fails to State Claims Upon Which Relief Can Be Granted.

Alternatively, the Court should dismiss the complaint under Rule 12(b)(6). To survive dismissal under 12(b)(6), a plaintiff must plead facts that "raise the right to relief above the

speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Jellyman v. City of Worcester*, 354 F. Supp. 3d 95, 98-9 (D. Mass. 2019). The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint. *Ocasio-Hernandez v. Fortuño-Burset*, 640 F.3d 1, 13 (1st Cir. 2011).

In assessing the sufficiency of a complaint, "an inquiring court must first separate the wheat from chaff; that is, the court must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 514 (1st Cir. Apr. 20, 2016). The Court then determines "whether the well-pleaded facts, taken in their entirety, permit the reasonable inference that the defendant is liable for the misconduct alleged." *Saade*, 2016 WL 4582083, at * 6.

### A.      The Fraud Claims Do Not Meet Rule 9(b)'s Heightened Pleading Standard.

Plaintiff asserts several claims sounding in fraud, including fraudulent misrepresentation (Count XXXI), fraudulent inducement (Count XXI), negligent misrepresentation[7] (Count VII) and a civil RICO claim[8] (Count XI). These claims fail to meet Rule 9(b)'s heightened pleading standard, which requires claims based on fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under Rule 9, the pleader must set forth with particularity the "who, what, when, where, and how of the alleged fraud." *United States ex rel. Ge*

---

[7] Negligent misrepresentation is subject to Rule 9(b)'s heightened pleading standard. *See N. Am. Cath. Educ. Programming Found., Inc. v. Cardinale*, 567 F.3d 8, 15 (1st Cir. 2009).

[8] Civil RICO claims also are subject to Rule 9(b)'s heightened pleading standard when they are based on allegations of fraud.  *See Puerto Rico Med. Emergency Grp., Inc. v. Iglesia Episcopal Puertorriquena, Inc.*, 118 F. Supp. 3d 447, 456 (D.P.R. 2015) (citing *Feinstein v. Resolution Trust Corp.*, 942 F.2d 34, 42 (1st Cir. 1991)).

*v. Takeda Pharm. Co.*, 737 F.3d 116, 123 (1st Cir. 2013). Mere conclusions, accusations, or speculation cannot meet Rule 9(b)'s particularity requirement. *Driscoll v. Landmark Bank for Sav.*, 758 F.Supp.48, 51 (D. Mass. 1991).

Plaintiff's fraud and RICO claims fail because they do not contain allegations of any specific misrepresentations by Defendants. Plaintiff does not allege what was said to him, by whom, when and how. Instead, Plaintiff alleges merely that Defendants "assured" him they would pay his fraudulent claims and engaged in unidentified "fraud referrals." Plaintiff does not plead who made these misrepresentations, when they were made, how they were made or what facts were misrepresented.  Consequently, these claims should be dismissed.[9]

### B.      Plaintiff's Consumer Protection Claims Fail.

Plaintiff also asserts several claims for violations of consumer protection laws, including "M.G.L. c. 93A Violations" (Count II), violations of unfair claims settlement practices regulations (Count VI), "consumer protection violations" (Count XX) and deceptive business practices (Count XXIV). Plaintiff does not identify the statutes on which he bases these claims. He appears to bring them under M.G.L. c. 93A §§ 2 and 11.[10] By and large, the claims accuse Defendants of deceptive business practices for not paying Plaintiff's fraudulent claims for reimbursement. These counts must be dismissed.

---

[9] These claims also likely are time-barred. The statute of limitations for fraud in Massachusetts is three years. M.G.L. c. 260 § 2A.  The statute of limitations for civil RICO claims is four years. *Agency Holding Corp. v. Malley-Duff & Assoc., Inc.*, 483 U.S. 143 (1987). Plaintiff commenced this action in October 2023. His failure to plead the dates of key events leaves Defendants unable to determine exactly when the statutes of limitations began to run. Because Plaintiff bases these claims on conduct beginning as early as March 2017, these claims may be barred by applicable statutes of limitations.

[10] Plaintiff has no claim under Section 2 of the statute because that provision may be enforced only by consumers and Plaintiff was not a consumer of Defendants' services. *See Kiewit Const. Co. v. Westchester Fire Ins. Co.*, 878 F.Supp. 298, 301 (D. Mass. 1995).

135330121v.4

In the context of disputes among businesses, where both parties are sophisticated commercial players, the "objectionable conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble world of commerce." *Ora Catering, Inc. v. Northland Ins. Co.*, 57 F.Supp.32 102, 110 (D. Mass. 2014). To prove a violation of Chapter 93A, a plaintiff must show that the defendant's conduct fell within "the penumbra" of some "established concept of unfairness" or was "immoral, unethical, oppressive or unscrupulous." *Id.* at 110; *Boyle v. Int'l Truck & Engine Corp.*, 369 F.3d 9, 15 (1st Cir. 2004). If a plaintiff fails to allege plausibly that a defendant acted in bad faith or violated an "established conception of unfairness" that would implicate Chapter 93A, the claim must be dismissed. *Id.* at 111.

Plaintiff's vague, conclusory allegations do not meet this standard. The "deceptive practices" Defendants are alleged to have engaged in include: (i) falsely assuring Plaintiff his claims would be processed (Compl. ¶ 66); (ii) refusing to pay Plaintiff's (fraudulent) claims for reimbursement (Compl. ¶ 89); and (iii) "misleading" providers to join the network and then refusing to pay claims for reimbursement (Compl. ¶¶ 152-55; 172-73). Again, Plaintiff does not plead *any* specific facts supporting these purportedly deceptive practices. But even if he had, they still would not be violations of M.G.L. c. 93A because they are not deceptive. What Plaintiff describes is, at best, a commercial contract dispute, not a pattern or practice of consumer fraud. Defendants did not act immorally, unethically or unscrupulously by terminating the relationship and refusing to pay Plaintiff's claims for reimbursement after discovering his fraud.

### C.    Plaintiff Cannot Assert Constitutional Violations against Defendants.

Plaintiff's claim for "conspiracy to violate civil rights" (Count XVI) also must be dismissed.  It is well-established that claims alleging constitutional injuries cannot proceed against private defendants. *Devine v. Town of W. Newbury*, No. 07cv11720-NG, 2009 WL 10817237 at

-10-

*5 (D. Mass. July 10, 2009); *see also Brentwood Acad. v. Tenn. Secondary School Athletic Ass'n*, 531 U.S. 288, 295 (2001). Barring unusual circumstances, a federal constitutional violation does not arise when a non-state actor, like a private corporation, acts. *Douglass v. Londonderry Sch. Bd.*, 372 F.Supp.2d 203, 207 (D.N.H. 2005). This is true for both First and Fourteenth Amendment claims, *see id.* at 208, and bars redress under the Constitution. *See Nixon v. Condon*, 286 U.S. 73 (1932) ("Fourteenth Amendment is restraint upon states and not upon private persons unconnected with state."). Defendants are private companies, not state actors. Accordingly, Plaintiff fails to state a claim upon which relief may be granted and it must be dismissed.

> **D.    There is no Private Right of Action to Enforce the Medical Loss Ratio Requirements of the Affordable Care Act or the Anti-Kickback Statute.**

Plaintiff alleges that Defendants somehow have violated the medical loss ratio requirements under the Affordable Care Act ("ACA") (Count XII). This claim fails because there is no private right of action to enforce that ACA provision and, even if there was, Plaintiff lacks standing.

Private rights of action to enforce federal law "must be created by Congress." *Buntin v. City of Boston*, 857 F.3d 69, 74 (1st Cir. 2017). The "judicial task is to interpret the statute…to determine whether it displays an intent to create not just a private right of action but also a private remedy." *Id.* In cases concerning other ACA provisions, this Court has held that ACA provisions that do not contain "rights-creating language" do not create private rights of action. *See Vorpahl v. Harvard Pilgrim Health Ins. Co.*, No. 17-cv-10844-DJC, 2018 WL 3518511 at *5 (D. Mass. July 20, 2018). Plaintiff has not identified any rights-creating language in the Medical Loss Ratio requirement provisions of the ACA and, indeed, there is none. Consequently, there is no private right of action to enforce this ACA provision.

Even if there was, Plaintiff lacks standing to assert the claim. To have constitutional standing, a plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). A plaintiff also must show causation between the injury and the misconduct. *Id*. (the injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court."). Here, Plaintiff does not allege either element. He has not alleged and cannot allege that a violation of the loss ratio requirements injured him as a medical provider; those requirements protect health care *consumers* by helping control the cost of health care. And he has not alleged how Defendants' refusal to pay his fraudulent claims caused his "injury." Thus, even if it were actionable, Plaintiff lacks standing to bring this claim.

Plaintiff also claims a violation of the Anti-Kickback Statute (Count XIV) pursuant to 42 U.S.C. § 1320a-7b, though Plaintiff does not identify the law. There is no private right of action to enforce that statute. *See Rzayeva v. United States*, 492 F. Supp. 2d 60, 78 (D. Conn. 2007). This is not a *qui tam* action. Plaintiff has not met the strict procedural requirements under the False Claims Act for bringing such an action. *Id.* Accordingly, this claim should be dismissed.

### E.   Plaintiff's Contract Claims Fail Because He Materially Breached the Contracts by Committing Healthcare Fraud.

Plaintiff alleges that Defendants breached the Provider Agreement (or perhaps both agreements, the complaint is unclear) by failing to reimburse him for claims (Count I). The Court should dismiss this claim because, given his recent criminal conviction[11], Plaintiff cannot plead plausibly the essential element that he performed his obligations under the contract.

---

[11] Plaintiff was recently convicted of 14 counts of healthcare fraud arising out of his fraudulent billing practices with the Defendants. *United States v. Kinrys*, Jury Verdict, ECF No. 185.

Plaintiff cannot state a breach of contract claim because he cannot plead sufficiently that he performed under the Agreement. Plaintiff's obligations were to provide medical services and bill for those services. A jury recently determined that Plaintiff did not perform those obligations. Rather, Plaintiff falsely billed the Defendants for services he did not provide. Consequently, the Court can and should disregard Plaintiff's conclusory allegation that he "performed" the contract and dismiss his breach of contract claim for failure to state a claim.

For the same reason, Plaintiff's claim for breach of the duty of good faith and fair dealing (Count X) must be dismissed. Plaintiff bases this claim on the same conduct as his breach of contract claim, *i.e.* Defendants' refusal to reimburse Plaintiff's false claims. Compl. ¶ 108. Under no circumstances were Defendants obligated (expressly or impliedly) to compensate Plaintiff for false claims. Consequently, Defendants' refusal to pay Plaintiff's fraudulent claims "conformed to the parties' reasonable understanding of performance obligations, as reflected in the overall spirit of the bargain" and did not breach the duty of good faith. *See, e.g., Bourgeois v. Blue Cross Blue Shield of Mass.*, 531 F.Supp.3d 407, 416 (D. Mass. 2021) (dismissing breach of duty of good faith and fair dealing claim where Court had dismissed related breach of contract claim).

### F.    Plaintiff Fails to State His Tort Claims.

Plaintiff alleges a variety of tort claims.[12] These claims all fail.

<u>Defamation</u>:  "Under Massachusetts law, defamation is the publication, either orally or in writing, of a statement concerning the plaintiff which is false and causes damage to the plaintiff." *Kaiser v. Kirchick*, No. 21-10590-MBB, 2021 WL 5964618, at *35 (D. Mass. Dec. 16, 2021). To

---

[12] These include defamation (Count V), intentional interference with contractual/business relations (Count IV), tortious interference with economic relations (Count VIII), tortious interference with current and prospective contractual relations (Count XXIX), intentional infliction of emotional distress (Count XIII) and breach of fiduciary duty (Count XXVI).

survive dismissal, a plaintiff alleging defamation must show "(1) that [t]he defendant made a statement, concerning the plaintiff, to a third party; (2) that the statement was defamatory such that it could damage the plaintiff's reputation in the community; (3) that [t]he defendant was at fault in making the statement; and (4) that [t]he statement either caused the plaintiff economic loss … or is actionable without proof of economic loss." *Id.* at *35-36. A defamation claim lacking specific facts from which one could infer that a false or defamatory statement was made must be dismissed. *See Nelson v. Hull*, No. 20-cv-11576, 2021 WL 1026714, at *12 (D. Mass. March 17, 2021).

Here, Plaintiff alleges only that "Defendants made misleading and deceptive and defamatory written and oral statements accusing Plaintiff of fraudulent overbilling of medical claims." There are no details about those purported statements. And, fatally, a jury empaneled by this Court recently determined that the allegedly false statement Plaintiff accuses Defendants of making—that Plaintiff fraudulently billed claims—is true. It is well settled law in Massachusetts that "truth is an absolute defense to defamation." *Taylor v. Swartwout*, 445 F. Supp. 2d 98, 102 (D. Mass. 2006). Accordingly, this claim fails.

Tortious Interference Counts:  For the same reason, the Court should dismiss Plaintiff's duplicative claims for tortious interference with economic relations (Count VIII) and tortious interference with current and prospective contractual relations (Count XXIX). In both claims, Plaintiff asserts that Defendants' false accusations of Plaintiff's fraud interfered with his business relationships. But Defendants alleged statements were true: Plaintiff committed health care fraud. As such, Plaintiff has not alleged Defendants made these alleged statements for an improper purpose, as required to state the claims.  *See Mullane v. Portfolio Media, Inc.*, No. 19-11496-PBS, 2020 WL 1932717 (D. Mass. Feb. 28, 2020) at *8 (A party claiming tortious interference with

-14-

economic relations must allege an intentional interference with the contract or business relationship for an improper purpose or by improper means, including defamation).[13]

Plaintiff's claim for intentional interference with contractual relations (Count IV) also fails. To state this claim, Plaintiff must plead (1) that there was a contract with a third party, (2) that the defendants knowingly induced the third party to break the contract, (3) that the defendants' interference was improper in means or motive and (4) that [the plaintiff] was harmed by the interference. *See Rapid Pharms. AG v. Gaytri Kachroo*, 180 F. Supp. 3d 96, 102-103 (D. Mass. 2015). With respect to the third element, improper interference must show evidence of "actual malice or a spiteful, malignant purpose, unrelated to a legitimate corporate interest." *Sunco Timber Co. Ltd. v. Sun*, No. 22-cv-10833-ADB, 2023 WL 2482237 at *5 (D. Mass. 2023). Plaintiff's complaint merely parrots the elements, failing to sufficiently allege any of them. In particular, Plaintiff does not allege any facts supporting his contention that Defendants knowingly induced third parties to violate their contracts with Plaintiff or that Defendants did so with an improper motive rising to the level of malice or a spiteful, malignant purpose. Consequently, this claim should be dismissed.  *See id*.

<u>Intentional Inflict of Emotional Distress</u>:  Plaintiff's claim for intentional infliction of emotional distress (Count XIII) fails. To assert a claim for IIED, a plaintiff must allege that "(1) that [defendant] intended, knew, or should have known that his conduct would cause emotional distress; (2) that the conduct was extreme and outrageous; (3) that the conduct caused emotional distress; and (4) that the emotional distress was severe." *Narragansett Bay Ins. Co. v. Kaplan*, 146 F. Supp. 3d 364, 371 (D. Mass. 2015). "Conduct qualifies as extreme and outrageous only if it

---

[13] Also worth noting is that the third parties in this scenario are *members of Defendants' healthcare plans*. Plaintiff does not explain what benefit Defendants would receive by driving patients away from his practice.

goes beyond all bounds of decency and is regarded as atrocious, and utterly intolerable in a civilized community." *Ameral v. JPMorgan Chase Bank, N.A.*, No. 18-cv-12531-PBS, 2019 WL 5588904, at *6 (D. Mass. July 25, 2019). An IIED claim should be dismissed where the complaint is devoid of specific allegations regarding the emotional toll resulting from the defendants' actions. *Hayes v. Mirick*, 378 F. Supp. 3d 109, 118 (D. Mass. 2019) (quotation omitted).

Plaintiff fails to allege any specific emotional toll he suffered resulting from Defendants' conduct. He concludes, without any facts, that "Defendants' deliberate and malicious actions, including misleadingly and deceptively accusing Plaintiff of fraud … were extreme and outrageous conduct." But unquestionably, making true statements about Plaintiff's commission of health care fraud is not and cannot be "extreme and outrageous conduct." In fact, this Court has held that even false public statements are not extreme and outrageous conduct justifying an emotional distress claim. *See Lebeau v. Town of Spencer*, 167 F. Supp. 2d 449, 457 (D. Mass. 2001) (defendants release of report with false statements to media and termination of employment did not constitute extreme and outrageous conduct). Accordingly, Plaintiff's IIED claim should be dismissed.

<u>Breach of Fiduciary Duty</u>:  Plaintiff's claim for breach of fiduciary duty (Count XXVI) can be disposed of easily. Plaintiff and Defendants were parties to an arms-length business transaction. Parties to arms-length business transactions do not owe each other fiduciary duties. *See Gemini Investors, Inc. v. Ches-Mont Disposal, LLC*, 629 F. Supp. 2d 163, 168-69 (D. Mass. 2009). Plaintiff alleges no facts supporting his conclusion that Defendants owed him fiduciary duties.

### G.     Plaintiff's Remaining Claims Fail.

Plaintiff's remaining claims for promissory estoppel (Count III), violation of the Mental Health Parity Act (Count IX), violation of anti-kickback statutes (Count XIV), ERISA violations (Count XV), antitrust violations (Count XIX), "concerted action" (Count XXII), "joint enterprise"

(Count XXIII), violations of state insurance laws (Count XXV), whistleblower retaliation (XXVII), violation of federal and state privacy laws (Count XXVIII), violation of the Healthcare Provider Anti-Retaliation laws (Count XXX), patient access compromise and impairment of medical practice (Count XXXII), monopolistic exploitation and unconscionable reimbursement terms (Count XXXIII) and anti-competitive practices and monopolistic abuse (Count XXXIV) all fail to state claims.

Promissory Estoppel:   The elements of a claim for promissory estoppel are "(1) a promisor makes a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee, (2) the promise does induce such action or forbearance, and (3) injustice can be avoided only by enforcement of the promise." *Gozzo v. Wells Fargo Bank, NA*, No. CV 16-10499-LTS, 2017 WL 1075071, at *4 (D. Mass. Mar. 21, 2017). Plaintiff asserts that Defendants' unspecified "promises" to pay his false reimbursement claims induced him to continue servicing Defendants' members. This is preposterous considering Plaintiff's fraud conviction; he falsely billed Defendants for services he *did not* provide. Even assuming he adequately alleged the other elements (which he did not), Plaintiff cannot plausibly allege he suffered any injustice from Defendants' refusal to pay Plaintiff's false claims. *Id.*

Violation of the Mental Health Parity Act:   Plaintiff's claim for violations of the Mental Health Parity and Addiction Equity Act (the "Parity Act") also fails. First, Plaintiff lacks standing because he has not alleged how he was injured by Defendants' purported violation of the Parity Act. Second, to state a claim under the Parity Act, a plaintiff must allege "that a mental-health treatment is categorically excluded while a corresponding medical treatment is not ...." *Steve C. v. Blue Cross & Blue Shield of Mass., Inc.*, 450 F. Supp. 3d 48, 59 (D. Mass. 2020) (citations omitted). Plaintiff fails to allege that Defendants "categorically excluded" any mental-health

-17-

treatment from any plan. He merely alleges that Defendants refused to pay certain of *his* claims for reimbursement. Similarly, he does not plausibly allege any "corresponding medical treatment" that Defendants did not categorically exclude from any plan.

Concerted Action and Joint Enterprise:  Plaintiff alleges several causes of action accusing Defendants of conspiring with the U.S. government to conduct sham investigations into Plaintiff's billing practices. *See* Compl. ¶¶ 165-170. These claims for "Joint Enterprise" (XXII) and "Concerted Action" (Count XXIII) must be dismissed. Plaintiff has alleged no facts even suggesting collusion between Defendants and the government. Moreover, his allegation that the fraud investigations were a "sham" are implausible given his recent criminal conviction for health care fraud and obstructing a federal investigation. Plaintiff's conviction sinks any plausible theory on which these claims could be based.  Moreover, "concerted action" and "joint enterprise" are *theories* of tort liability akin to aiding and abetting; they are not standalone claims. *See, e.g., Echaverria v. Roach*, 565 F. Supp. 3d 51, 99-100 (D. Mass. 2021) (describing "concert of action" as a theory of "tort-based joint liability"); *Ryba v. LaLancette*, 417 F. Supp. 2d 199 (D. Mass. 2006) (describing "joint enterprise" as a theory of tort liability). Because Plaintiff fails plausibly to allege any underlying tort giving rise to joint liability, the Court should dismiss these counts.

Retaliation Claims:  Plaintiff also alleges two claims for retaliation, "retaliation against whistleblower" (Count XXVII) and "violation of healthcare provider anti-retaliation laws" (Count XXX). Neither claim identifies the pertinent statutes, leaving Defendants unable to prepare an adequate defense. Nevertheless, both claims fail because Defendants terminated their relationship with Plaintiff because they discovered his fraudulent billing scheme. Plaintiff's recent criminal conviction related to that fraudulent billing scheme renders implausible Plaintiff's conclusory allegations that Defendants terminated Plaintiff in retaliation for something else he did. Further, to

the extent Plaintiff relies on M.G.L. c. 149 § 185 for these claims, they are time-barred by the two-year statute of limitations, as Defendants terminated Plaintiff from the participating provider network in December 2020. Moreover, Plaintiff is not a whistleblower and does not plausibly allege that he took any actions to blow the whistle. The only pertinent allegation is the vague statement that he "reported Defendants' fraudulent practices to regulatory authorities." He does not say when, to whom or what was reported. Consequently, Plaintiff is not a whistleblower protected by the relevant statutes.

Antitrust Violations:   Plaintiff lacks standing to assert his antitrust claim (Count XIX). "A private plaintiff has standing to bring an antitrust action if: (1) the plaintiff's business or property has been injured; (2) the defendant's conduct was the substantial cause of the injury; and (3) the injury is of the type the antitrust laws were intended to prevent." *Varian Semiconductor Equip. Assocs. v. Advanced Ion Beam Tech., Inc.*, No. 08-10487-NG, 2019 WL 2425849, at *5 (D. Mass. July 20, 2009). Plaintiff has not alleged that he suffered an antitrust injury. Moreover, Defendants' purported anticompetitive conduct—investigating billing practices to safeguard against fraud by network providers—is the opposite of anticompetitive; it is the type of conduct antitrust laws promote to achieve competition's basic goals—lower prices, better products, and more efficient production methods. *See Town of Concord, Mass. v. Boston Edison Co.*, 915 F.2d 17, 21-22 (1st Cir. 1990). Because Plaintiff has not alleged that Defendants engaged in anticompetitive behavior or that he suffered any injury, this claim should be dismissed.

ERISA:   Plaintiff asserts that Defendants violated ERISA by failing to pay his fraudulent claims for reimbursement (Count XV). Plaintiff lacks standing to assert this claim. ERISA "specifically enumerates the parties with standing to sue to enforce ERISA's provisions: participants, beneficiaries, fiduciaries and the Secretary of Labor." *City of Hope Nat. Med. Ctr. v.*

*HealthPlus, Inc.*, 156 F.3d 223, 226 (1st Cir. 1998). A beneficiary is someone designated by a participant who is or may become entitled to a benefit under the plan. *Id.* A participant is any employee or former employee of an employer who is or may become eligible to receive a benefit from an employee benefit plan or whose beneficiaries may be eligible to receive such benefit. *Id.* Plaintiff is neither of these—he is a health care *provider*. Consequently, he lacks standing to sue under ERISA and this claim should be dismissed. *Id.*

Purported Violations of Various Unidentified Laws:   Plaintiff also has failed to state claims for those counts that vaguely reference state or federal laws but do not cite to any specific statutes, regulations or rules.[14] For each of these counts, Plaintiff fails to identify what law or rule Defendants purportedly violated. Consequently, Defendants have not received notice of the claims against them and cannot prepare a defense. The Court should dismiss these counts for failure to state a claim. *See, e.g., L'Esperance v. HSBC Consumer Lending, Inc.*, No. 11-cv-555-LM, 2012 WL 345892, at *5 (D.N.H. Feb. 1, 2012) (dismissing claim for "unfair practices" based on allegation that defendant "violated regulations, statutes, common law" where pleading failed to "indicate what regulations or statutes" were violated). Moreover, Counts XXXII, XXXIII and XXXIV are not cognizable causes of action.

**CONCLUSION**

For all these reasons, Defendants respectfully request that this Court grant their motion to dismiss the complaint with prejudice, or in the alternative, order Plaintiff to file an amended complaint to provide a more definite statement of the claims against the Defendants.

---

[14] Specifically, Plaintiff asserts counts titled: Violation of Massachusetts Insurance Laws (XXV), Violation of Federal and State Privacy Laws (XXVIII), Monopolistic Exploitation and Unconscionable Reimbursement Terms (XXXIII), Anticompetitive Practices and Monopolistic Abuse (XXXIV), and Patient Access Compromise and Impairment of Medical Practice (XXXII).

-20-

Respectfully submitted,

MASS GENERAL BRIGHAM HEALTH PLAN, INC.

and

OPTUM, INC.

By their attorneys,

/s/ Allison M. O'Neil

Allison M. O'Neil (BBO # 641330)
Allison.ONeil@lockelord.com
Margaret C. Brown (BBO # 712003)
Margaret.Brown@lockelord.com
LOCKE LORD LLP
111 Huntington Avenue
Boston, MA  02199-7613
617-239-0100

Dated:  November 16, 2023

## Certificate of Service

I certify that on November 16, 2023, this document, filed through the ECF System of the United States District Court for the District of Massachusetts, was sent via regular mail and electronic mail to Plaintiff:

Gustavo Kinrys (*Pro Se*)
4 Goose Cove Way
Nantucket, MA 02554-9998
Gk21atlaw@gmail.com

/s/ Allison M. O'Neil
Allison M. O'Neil

-21-

135330121v.4